MURDOCK, Justice.
The petition in the present case concerns a discovery dispute in a tort action alleging sexual misconduct by a supervisor. Laura Kay Carlisle petitions this Court for a writ of mandamus directing the Escam-bia Circuit Court to issue a protective order pursuant to Rule 26(c), Ala. R. Civ. P., prohibiting discovery of evidence regard *1204 ing Carlisle’s past sexual conduct unless the conduct directly involved Thomas G. Moore, who was Carlisle’s supervisor, or occurred while Carlisle was on duty at the veterinary clinic operated by Atmore Animal Hospital, LLC (“the clinic”), where Moore and Carlisle worked. We deny the petition.

I. Facts and Procedural History

Carlisle worked for the clinic from 2000 to 2005. During her employment, Moore, a veterinarian and a managing member of the clinic, was Carlisle’s supervisor and in that capacity had daily frequent interactions with Carlisle. In September 2006, after she ceased working for the clinic, Carlisle sued Moore and the clinic; she alleged claims of assault and battery, invasion of privacy, the tort of outrage, and negligent supervision and/or retention.[1] Carlisle alleged that Moore had inappropriately touched her, that he had directed sexually suggestive and offensive remarks and gestures toward her, that he had openly displayed his genitalia to her, and that he had made inappropriate sexual references in her presence during her employment with the clinic. Car-lisle further alleged that, as a result of Moore’s actions, she suffered mental anguish, emotional distress, shame, humiliation, embarrassment, and lost wages. Moore answered the complaint, denying all Carlisle’s allegations and contending that any sexual contact between him and Car-lisle was consensual.
On September 27, 2007, Moore’s counsel, Edward Bowron, deposed Carlisle in the presence of her counsel, Mark Ryan; Moore also was present. At a certain point in the deposition, Bowron began to ask Carlisle questions about her sexual history. As it pertains to this petition, the exchange began with a series of questions consisting of whether Carlisle had had consensual sexual intercourse with Moore; whether she had done so on one occasion outside the workplace; and whether she had done so on two occasions in Moore’s office. Carlisle responded in the negative to each question. Bowron then began what apparently was to be a series of questions regarding Carlisle’s sexual history generally.
At that point, the parties agreed to adjourn the deposition in order to allow Car-lisle to file for a protective order to prevent Moore from asking her questions about her sexual history. Carlisle then filed a motion for a protective order pursuant to Rule 26(c), Ala. R. Civ. P., seeking a prohibition on any questions concerning Carlisle’s sexual predisposition or past sexual conduct unless such conduct either involved Moore or occurred while Carlisle was on duty at the clinic’s facility. Moore filed a brief in response to the motion in which he argued that Carlisle’s answers to such questions could lead to admissible evidence.
The trial court held a hearing on the motion, and on August 27, 2008, the trial court denied the motion, stating, in pertinent part:
“Based upon the briefs and arguments presented, [Carlisle’s motion for a protective order] is, hereby, Denied.
“It is further ordered that this order denying the motion for protective order in no way addresses the admissibility of any evidence and/or testimony obtained *1205 by the questions that are being allowed to be asked.”
Carlisle now petitions this Court for a writ of mandamus, asking this Court to direct the trial court to vacate its order denying her motion for a protective order and, specifically, to enter an order prohibiting all discovery of Carlisle’s sexual history “unless such conduct either involves [Moore] or occurred while [Carlisle] was employed at Atmore Animal Hospital.”

II. Analysis

Rule 26(b)(1), Ala. R. Civ. P., provides, in pertinent part:
“Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action .... It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.”
Rule 26(c), Ala. R. Civ. P., provides, in pertinent part:
“Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition or production or inspection, the court in the circuit where the deposition or production or inspection is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense
Regarding the interaction between these two subsections of Rule 26, Ala. R. Civ. P., this Court has observed:
“ ‘It is well settled that the Rules on deposition and discovery are to be broadly and liberally construed. Rule 26(e) [Alabama Rules of Civil Procedure] recognizes, however, that the right to discovery is not unlimited, and the trial court has broad powers to control the use of the process to prevent its abuse by any party. ... The question on review, then, becomes one of whether, under all the circumstances, the court has abused this discretion. An appellate court may not decide whether it would, in the first instance, have permitted the prayed for discovery.’ ”
Ex parte First Nat’l Bank of Pulaski, 730 So.2d 1160, 1162 (Ala.1999) (quoting Ex parte Nissei Sangyo America, Ltd., 577 So.2d 912, 914 (Ala.1991)).
Similarly, with respect to the use of a mandamus petition to obtain appellate review of a discovery matter, this Court has stated:
“The utilization of a writ of mandamus to compel or prohibit discovery is restricted because of the discretionary nature of a discovery order. The right sought to be enforced by mandamus must be clear and certain with no reasonable basis for controversy about the right to relief. The writ will not issue where the right in question is doubtful.”
Ex parte Dorsey Trailers, Inc., 397 So.2d 98, 102 (Ala.1981).
In Ex parte Ocwen Federal Bank, FSB, 872 So.2d 810 (Ala.2003), this Court began its analysis of the discovery dispute at issue by explaining as follows:
“Mandamus is an extraordinary remedy and will be granted only where there is ‘(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.’ Ex parte Alfab, Inc., 586 So.2d 889, 891 (Ala.1991). This Court will not issue the writ of mandamus *1206 where the petitioner has ‘ “full and adequate relief’ ’ by appeal. State v. Cobb, 288 Ala. 675, 678, 264 So.2d 523, 526 (1972) (quoting State v. Williams, 69 Ala. 311, 316 (1881)).”
872 So.2d at 813. The Ocwen Court then noted the discretion that resides in a trial court with regard to discovery matters and, echoing the first three elements articulated in Ex parte Alfab, Inc., 586 So.2d 889 (Ala.1991), stated the following two-part standard for reversing a trial court’s discovery ruling in response to a mandamus petition:
“(1) [whether] there is a showing that the trial court clearly exceeded its discretion, and (2) [whether] the aggrieved party does not have an adequate remedy by ordinary appeal. The petitioner has an affirmative burden to prove the existence of each of these conditions.”
872 So.2d at 813.
Having stated this two-part standard, the Ocwen Court next explained that, aside from “exceptional cases,” appellate review of a discovery order by mandamus generally will not be available:
“In certain exceptional cases, however, review by appeal of a discovery order may be inadequate, for example, (a) when a privilege is disregarded ...; (b) when a discovery order compels the production of patently irrelevant or duplica-tive documents, such as to clearly constitute harassment or impose a burden on the producing party far out of proportion to any benefit that may obtain to the requesting party ...; (c) when the trial court either imposes sanctions effectively precluding a decision on the merits or denies discovery going to a party’s entire action or defense so that, in either event, the outcome has been all but determined, and the petitioner would be merely going through the motions of a trial to obtain an appeal; or (d) when the trial court impermissibly prevents the petitioner from making a record on the discovery issue so that the appellate court cannot review the effect of the trial court’s alleged error.”
872 So.2d at 813-14 (emphasis added).
As indicated, Ocwen referred to these four “exceptional cases” as “examplefs]” of the types of cases in which mandamus relief may be available to review a discovery order. In Ex parte Crawford, Broadcasting Co., 904 So.2d 221, 224 (Ala.2004), this Court specifically explained that the four exceptional cases identified in Ocwen were “[t]he four most common examples” of cases in which review by appeal of a discovery order may not be adequate and that “the list is not exhaustive.” See also Ex parte St. Vincent’s Hosp., 991 So.2d 200, 207 (Ala.2008) (to the same effect).
The nonexhaustive nature of the list of “exceptional cases” identified in Ocwen means that the faitee of a discovery request to fall within the parameters of an established privilege as contemplated by exceptional case (a) or to entail the production of documents of the nature contemplated by exceptional case (b) does not necessarily place that request beyond our consideration in a mandamus proceeding, provided, of course, that it otherwise meets the two-part test articulated in Ocwen. Indeed, with respect to exceptional case (a), this Court has already recognized that “a discovery order [that] compels the production of information [may] implicate[ ] privacy considerations analogous to an evidentiary privilege.” Ex parte St. Vincent’s Hosp., 991 So.2d at 207.
Carlisle does not argue that this case falls within one of the Ocwen “exceptional cases” or that one or more of those categories (e.g., exceptional case (a) or (b)) should be expanded to address deposition testimony of the nature at issue here. *1207 What she does argue, however — consistent with the two-part standard articulated in Ocwen for reversal of a trial court’s ruling on a discovery issue — is 1) that the trial court clearly exceeded its discretion and 2) that she has no adequate remedy by ordinary appeal. The principle of stare decisis and this Court’s reluctance to consider abandoning precedent in the absence of an adequate argument to us that we should do so[2] do not prevent us from considering Carlisle’s position in this regard since, as noted, the list of four “exceptional cases” in Ocwen is not exhaustive.
Nonetheless, Carlisle has failed to satisfy the two-part standard articulated in Ociven. Specifically, Carlisle has not been able to demonstrate that the trial court “clearly exceeded its discretion” in allowing Moore’s counsel to pursue the line of questioning in her deposition regarding her sexual history. Even if we were inclined, for example, to apply the criteria of Ocwen’s exceptional case (b) in an appropriate circumstance to deposition testimony, it is not as if the line of questioning sought to be pursued here is being pursued in, for instance, an automobile-accident case.[3] This is a sexual-harassment case. Moore states that he intends to show that his conduct vis-a-vis Carlisle, although it occurred in the workplace, was consensual. Carlisle contends that Moore caused her great emotional distress, mental anguish, shame, and embarrassment. Moore responds by arguing that Carlisle’s sexual history is relevant to the level of offense she felt from the acts she alleges Moore committed and to an evaluation of the extent to which Carlisle might have been harmed by his alleged conduct. Under such circumstances, and given the juncture at which this case is presented to us, we cannot say that the matters into which defense counsel has sought to inquire are “patently irrelevant.”
Nor can we say, at the juncture at which we find ourselves in the present case, that the privacy implications relating to the discovery of Carlisle’s past sexual history would serve to exempt all that history (other than her experience with Moore or in the clinic’s facility itself) from discovery in a manner analogous to exceptional case (a) identified in Ocwen. See Ex parte St. Vincent’s Hosp., 991 So.2d at 207. It remains to be seen whether and to what extent that history will have a material bearing on the merits of the claims and issues Carlisle herself raises.
If this were an action in which claims of a different kind were asserted, there might be less of a question that information about the plaintiffs past in the subject area of the claims asserted would be relevant for discovery purposes. For example, when a party files an action that places his or her physical condition in issue, this Court has consistently held that the plaintiff “waives his privacy rights in favor of *1208 the public’s interest in full disclosure.” Ex parte Dumas, 778 So.2d 798, 801 (Ala.2000). In such a case, therefore, although a defendant seeks medical information about the plaintiff that is seemingly unrelated to the claimed injuries, discovery of that information may be permitted. See id. We find a noteworthy parallel between those cases involving physical injuries and the present case.
We are not unmindful of the very personal nature of the information sought from Carlisle regarding her past conduct. Nor do we intend to suggest that a plaintiff with a promiscuous past could not feel the same shame and humiliation as someone without such a past if involuntarily subjected to sexual harassment in the workplace by someone in a position of authority. The fact remains, however, that, in an appropriate case, the relationship between a plaintiffs past sexual conduct and the question whether the defendant’s conduct was consensual and the extent to which the plaintiff was injured thereby will be questions for the jury. Moore should not be prevented from presenting his theory of the case by a blanket assertion that Carlisle’s past conduct could not have any bearing on the issues raised in this case.[4]
Again, although the information being requested in discovery ultimately may be determined to be irrelevant and inadmissible, we cannot conclude at this juncture, and from the materials before us, that it is patently irrelevant. While Carlisle may have strenuous objections to the admissibility at trial of the information sought by Moore, for purposes of discovery it cannot be determined from the materials before us in this case that there is no reasonable likelihood any of the information will aid Moore in his defense.[5]
Carlisle argues that at some point the type of information Moore seeks is too remote to be useful and that the danger of prejudice outweighs the probative value of the information. Although we may assume this view to be correct, Carlisle has not yet demonstrated what that point would be for purposes of the present case. Other than making the proposal to limit the deposition inquiries to her experiences either with Moore or in the clime’s facility, she does not provide any argument to this Court as to the point in time or other context as to which the information sought should be deemed too remote. Instead, Carlisle merely seeks at this juncture an order that essentially would deny Moore and the trial court the opportunity to evaluate whether any of her sexual history other than with Moore and at the clinic’s facility has sufficient probative value to be *1209 admissible or might lead to evidence that has such value.[6]
On the basis of the foregoing, we deny Carlisle’s petition for a writ of mandamus. We cannot say, given the information available to the trial court when it ruled in this case, that it exceeded its discretion in denying the particular protective order requested in the trial court and in the petition now before this Court. Nothing in this opinion should be construed as preventing the trial court from addressing, as circumstances may warrant, any attempt by Moore to overreach in his questioning of Carlisle or to address a motion for protective order based on some showing materially different from what is now before us.
PETITION DENIED.
LYONS, WOODALL, BOLIN, PARKER, and SHAW, JJ., concur.
SMITH, J., concurs in the result.
COBB, C.J., dissents.

. "It is well settled that Alabama does not recognize an independent cause of action for sexual harassment. Instead, claims of sexual harassment are maintained under common-law tort theories such as assault and battery, invasion of privacy, negligent training and supervision, and outrage.” Machen v. Childersburg Bancorporation, Inc., 761 So.2d 981, 983 n. 1 (Ala.1999).

. "Stare decisis commands, at a minimum, a degree of respect from this Court that makes it disinclined to overrule controlling precedent when it is not invited to do so.” Moore v. Prudential Residential Servs. Ltd. P'ship, 849 So.2d 914, 926 (Ala.2002).

. Compare, e.g., Ex parte Crawford Broad. Co., supra, a case in which the plaintiffs sought the production of one year’s worth of payroll records for two radio talk-show hosts, the defendants in a defamation case. The defendants’ motion for a protective order was denied, and their employer filed a petition for a writ of mandamus in this Court, arguing that mandamus was proper under exceptional cases (a) and (b). Pretermitting consideration of exceptional case (a), this Court considered the mandamus petition under exceptional case (b) and concluded that the records sought were "patently irrelevant” to the defamation action and that compelling the single year’s worth of payroll records would "clearly constitute harassment” of the defendants. 904 So.2d at 226.

. For example, Carlisle’s past sexual behavior may include consensual sexual behavior in other workplaces where Carlisle was employed or some analogous context that creates an issue as to the credibility of her claims. Likewise, it is conceivable that Carlisle's past sexual behavior might have made her unlikely to be ashamed, embarrassed, or distressed as a result of some of Moore's alleged behavior. Cf., e.g., Williams v. District Court, 866 P.2d 908, 911-12 (Colo.1993) (“Williams is seeking compensatory damages in excess of $1,000,000 and has alleged loss of reputation as one of his injuries. While damages are presumed, and need not be proven, in cases involving defamation per se, the jury must still consider any actual impairment to the plaintiff's reputation in determining the amount of damages. Moreover, a defendant in a defamation action may present any evidence which tends to mitigate damages.” (citations and footnote omitted)).

. The trial court's order makes it clear that it will review Carlisle’s arguments concerning the admissibility of her past sexual history following discovery at the appropriate time; we also have no reason to doubt that the trial court will enter a protective order during discovery if the circumstances warrant.

. Carlisle did not make an in camera proffer regarding the information sought by Moore in the deposition. We also note that we are not presented in this case with an issue as to whether the trial court should have issued a protective order to prevent disclosure or dissemination of information learned in the deposition until the trial court had the opportunity to make a further assessment of the admissibility of such information.